UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

No. 07-CV-2358 (JFB) (AKT)
_____

COSTER AURELIEN,

Plaintiff,

VERSUS

HENRY SCHEIN, INC. AND PAUL ROSE, INDIVIDUALLY AND IN HIS CAPACITY AS VICE PRESIDENT OF INVENTORY MANAGEMENT,

Defendants.

_____

MEMORANDUM AND ORDER
February 12, 2009
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff, Coster Aurelien ("Aurelien" or "plaintiff") brings this employment discrimination action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, against Henry Schein, Inc. ("Henry Schein" or the "Company") and Paul Rose (collectively, "defendants"), alleging that he was denied four promotions and was constructively terminated as a result of unlawful discrimination based on gender and race.[1]

Moreover, plaintiff never raised or referenced his national origin in his EEOC Complaint at any point and plaintiff's counsel confirmed in plaintiff's deposition that there was no national origin claim in the Amended Complaint. (*See* Aurelien Dep., at 147 (plaintiff's counsel stating: "For the record, national origin is not in the amended complaint").) Finally, plaintiff's counsel did not even counter defendants' contention in the summary judgment papers that any such national origin claim was not exhausted. To the extent a national origin claim is being asserted, the Court agrees with defendants on the exhaustion issue. Although the Second Circuit has found race discrimination claims to be reasonably related to an EEOC charge of national-origin discrimination in some circumstances, *Mathirampuzha v. Potter*, 548 F.3d 70, 77 (2d Cir. 2008); *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (collecting cases),

---

[1] Although defendants also move for summary judgment on any discrimination claims based upon national origin, plaintiff is not pursuing any claims of discrimination on the basis of national origin, but rather is asserting discrimination on the basis of race and gender. The causes of action in the Amended Complaint only make reference to race and gender.

Defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth herein, defendants' motion is denied.

I. FACTS[2]

The Court has taken the facts described below from the parties' depositions, affidavits, and exhibits, and from the Rule 56.1 statements of facts. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2005).

Plaintiff was hired by Henry Schein, Inc. as an Assistant Buyer in the Inventory Management Department on April 21, 2003. (Defendants' 56.1 Statement ("Defs' 56.1") ¶ 1.) The hiring decision was approved by Paul Rose, Vice President Corporate Inventory Management. (Defs' 56.1 ¶ 4.) Plaintiff was promoted from Assistant Buyer to Buyer on March 8, 2004, based on his performance as an assistant buyer. (Defs' 56.1 ¶ 7.) The promotion was approved by Mr. Rose. (Defs' 56.1 ¶ 10.) During the summer of 2005, plaintiff sent out his resume and received an offer from another company, which he brought to Henry Schein, Inc.'s attention. (Defs' 56.1 ¶¶ 11, 13.) To induce plaintiff to stay, Henry Schein, Inc. offered him a pay raise of 16.2% and "the potential to earn a significantly higher bonus." (Defs' 56.1 ¶ 16.) Plaintiff accepted Henry Schein, Inc.'s offer and stayed on as a Buyer.

In September 2005, two Senior Buyer positions became available. (Defs' 56.1 ¶ 19.) Three employees applied for the two available positions: Kristie Hoffman ("Hoffman"), Sharon Collyer ("Collyer"), and plaintiff. (Defs' 56.1 ¶¶ 20-22; Aurelien Aff. ¶ 5.) Sharon Collyer, a white female, was a Buyer on the team with one of the openings, and plaintiff was a Buyer on the other team with an opening. Both Collyer and plaintiff were in the dental division. Kristie Hoffman, a white female, was a Buyer in the medical division. (Aurelien Aff. ¶ 5.) The positions went to Hoffman and Collyer.

---

there is no indication whatsoever in plaintiff's EEOC complaint or charge that a claim based on national origin may exist. In fact, as noted above, plaintiff does not even mention his Haitian origin in the EEOC complaint. Under these circumstances, it cannot be said that the claims are "reasonably related." *Deravin*, 335 F.3d at 201 ("Raising national origin claim before the EEOC does not automatically suffice to alert the agency to investigate incidences of racial discrimination."); *Benjamin v. N.Y. City Dep't of Health*, 2002 U.S. Dist. LEXIS 5446, at *11-*12 (S.D.N.Y. Mar. 29, 2002) (dismissing national origin claim where a Jamaican plaintiff alleged discrimination based on race, but not national origin, at the administrative level because "[a]n assertion that one is 'dark skinned' does not suggest a claim of discrimination based on national origin"), *aff'd in part and vacated in part on other grounds*, 144 Fed. Appx. 140, 142 (2d Cir. 2005); *see also Alonzo v. Chase Manhattan Bank, N.A.*, 25 F. Supp. 2d 455, 459 (S.D.N.Y. 1998) (holding that the term "'black' . . . does not trigger the concept of national origin or an affiliation to a particular country"). In short, it is the Court's conclusion that there is no national origin claim contained in the Amended Complaint and, even assuming such a claim was asserted, it cannot survive summary judgment under the circumstances of this case because it was not exhausted with the EEOC and was not "reasonably related" to the other claims raised with the EEOC.

[2] Where only defendants' 56.1 Statement is cited, the facts are taken from defendants' 56.1 Statement, and plaintiff does not dispute the fact asserted or has offered no admissible evidence to refute that fact.

"The job description for Senior Buyer states that 'supervisory experience [is] preferred' and that incumbent 'must demonstrate leadership abilities,' and it requires a 'strong understanding of Inventory Management.'" (Defs' 56.1 ¶ 26.) It is undisputed that the "required and preferred qualifications in the Senior Buyer job description were established because they accurately reflected the legitimate business needs of the Company" and were not created with discriminatory intent. (Defs' 56.1 ¶¶ 27-28.) Performance reviews were also considered in evaluating candidates.

Kristie Hoffman had been employed by Henry Schein, Inc. as a Buyer for six years, during which time she had "demonstrated an ability to manage others on her Buying Team effectively." (Defs' 56.1 ¶¶ 30-31; Aurelien Dep., at 241-43.) Prior to her employment at Henry Schein, Inc., "Ms. Hoffman also had approximately six years of related buying experience with a pharmaceutical company plus about two years of supervisory experience with that company." (Defs' 56.1 ¶ 32; Aurelien Dep., at 242.) Ms. Hoffman's performance review that year stated that her team "had gone through several personnel changes throughout the year and Kristie was able to help train new employees while juggling her other responsibilities. . . . She ha[d] also shown the ability to utilize her communication skills to involve management, other departments within Henry Schein, and the suppliers to quickly handle any problems that arise." (Defs' 56.1 ¶ 33.)

Sharon Collyer joined Henry Schein, Inc. six months before plaintiff as an Assistant Buyer and was promoted to Buyer within ten months of her date of hire. (Defs' 56.1 ¶¶ 34-35.) During her two years as a Buyer, Ms. Collyer "demonstrated an ability to manage others on her Buyer Team." (Defs' 56.1 ¶ 36.) Prior to joining Henry Schein, Inc., Ms. Collyer had a year of supervisory experience. (Defs' 56.1 ¶ 36.) Her performance review that year noted that the "team has always looked to Sharon as a go to person." (Defs' 56.1 ¶ 37.)

As of September 2005, plaintiff had been a Buyer for a year and a half and had no prior supervisory experience, but he did gain supervisory experience in his role as Buyer as he frequently stood in for his supervisor and managed people below him. (Defs' 56.1 ¶ 38; Plaintiff's 56.1 Statement ("Pltf's 56.1") ¶ 38.) Plaintiff's performance review for that year stated that "I would like to see Coster continue to include his assistant buyer in vendor meetings so that she can learn as much as possible about establishing valuable, beneficial relationship [sic] with our vendors" and that he needed to "continue to gather as much knowledge as possible from his senior buyer, manager, Senior Inventory Analysts, and people from related departments, such as marketing." (Defs' 56.1 ¶ 39.)

Defendants contend that "[t]he Management Team, made up of Jay Goldberg, Siobhan Kelly-Hathaway, Michelle Green, and Frank Audia, interviewed the three candidates for the two Senior Buyer vacancies" and concluded unanimously that "Ms. Hoffman and Ms. Collyer's buying and supervisory experience made them better candidates for the two open Senior Buyer positions." (Defs' 56.1 ¶¶ 43-44.) Plaintiff denies this contention and states that "defendants destroyed the notes of interviews and/or failed to keep them and are just making conclusory assertions and where there was anything they put in writing, it totally contradicted their assertions." (Pltf's 56.1 ¶ 44.)

In January 2006, a Senior Buyer position became available, but rather than filling the

3

position, the Company restructured the Buying Teams by redistributing the team members to other Buying Teams. (Defs' 56.1 ¶¶ 49-51; Aurelien Dep., at 137-38, 311-12.) Defendants contend that this was part of a restructuring plan to reduce the "amount of buying required of Senior Buyers, so that they could focus more of their attention on managing their Teams." (Defs' 56.1 ¶ 49.) Plaintiff alleges that this was a pretext for discrimination. Specifically, according to plaintiff, "[s]ince Plaintiff was the best qualified to take a future Senior Buyer position that became opened [sic] as a result of a Senior Buyer leaving his or her position, rather than open the position and promote Plaintiff to Senior Buyer, Defendant's [sic] instead told Plaintiff that the Senior Buyer position was eliminated." (Pltf's 56.1 ¶ 49.) No one applied to fill the Senior Buyer vacancy; not even plaintiff.

In May 2006, a Product Manager position became available in the Company's Corporate Brand Development Department. (Defs' 56.1 ¶ 60.) "The position required interfacing with the Company's many divisions and the ability to be responsive to the product needs of those divisions" and "involved the preparation of comparative analyses between current products and new opportunities (competitive pricing proposals), reasonably sophisticated analytical skills, and the presentation of products to various divisions within the Company." (Defs' 56.1 ¶¶ 61-62.)

Plaintiff and his supervisor, Kim O'Connell, were the only two applicants for the position. (Defs' 56.1 ¶ 63.) "Ms. O'Connell had been with Henry Schein for fourteen years at the time of the promotion decision," during which time she had served as a Buyer for four years and a Senior Buyer for three years. (Defs' 56.1 ¶¶ 65-66.) Defendants contend that she "developed the kinds of working relationships with the other Company divisions that were important to the Product Manager position." (Defs' 56.1 ¶ 65; *but see* Pltf's 56.1 ¶ 65.) ("Plaintiff knows first hand that Kim O'Connell did not perform well as his supervisor, and that Kim O'Connell was applying for the position of Product Manager as a desperation move.")

Rick Glass and Jeffrey Sherman interviewed both candidates and defendants claim that they concluded unanimously "that Ms. O'Connell's analytical skills, and her many years with the Company, which had given her the time to develop strong relationships with the different divisions in the Company, and during which she had served in a supervisory position, made her the better candidate." (Defs' 56.1 ¶ 70.) However, plaintiff contends that an email he received from Jeffrey Sherman indicates otherwise. (Pltf's 56.1 ¶ 70.) The email was sent on June 2, 2006 in response to an email from plaintiff noting that "[i]ts [sic] a real shame because I would have been a big asset to your team." Mr. Sherman responded "I totally agree your ability to bring what we needed was crystal clear I believe, who knows what else may come down the pipe. You also really impressed Rick." (Plaintiff's Opposition to Summary Judgment, Ex. 17.) Plaintiff alleges that this indicates that Mr. Sherman and Mr. Glass selected plaintiff for the position, but that Paul Rose, Vice President Corporate Inventory Management, did not approve that selection. (Pltf's 56.1 ¶ 70.) Plaintiff concedes that Mr. Sherman and Mr. Glass had no discriminatory animus towards him. (Defs' 56.1 ¶ 73.) After plaintiff was not selected for this position, he told Supervisor Michelle Green that he thought he was not promoted to Product Manager because of his race. Defendants assert that Ms. Green did not agree or disagree with plaintiff. (Defs' 56.1 ¶ 88; Aurelien Dep., at 19-20.) Plaintiff contends

4

that Ms. Green said, "I don't disagree with you, look around you." (Aurelien Aff. ¶ 28.)

The Company did not fill the Senior Buyer position that Ms. O'Connell vacated. Defendants claim that this was done as part of the "plan to have the Senior Buyers manage, not buy, and it once again reduced the number of Buying Teams, this time from five to four." (Defs' 56.1 ¶ 75.) Plaintiff claims that this was pretext for discrimination and points to an email from Michelle Green, sent on June 9, 2006, that indicated her willingness to meet with a Senior Buyer applicant. (Plaintiff's Opposition to Summary Judgment, Ex. 19.) No one applied to fill the position and no one was hired to fill it. (Defs' 56.1 ¶ 76.) "Since then and through today, the Inventory Management Department has not increased the number of Buying Teams, each headed by one Senior Buyer." (Defs' 56.1 ¶ 78.)

On July 21, 2006, plaintiff announced his intention to leave Henry Schein, Inc. (Defs' 56.1 ¶ 80.) Defendants claim that they "made efforts to get Mr. Aurelien to reconsider and possibly take another position within Henry Schein, but [their] efforts were rebuffed by Mr. Aurelien." (Defs' 56.1 ¶ 81; *but see* Aurelien Dep. at 262-63.) Plaintiff admits that he was not subjected to a racially-hostile atmosphere at work and that he left solely due to his lack of promotions. (Defs' 56.1 ¶ 58; Aurelien Dep., at 15.)

Henry Schein, Inc. had a policy prohibiting discrimination with a complaint procedure in place. Plaintiff had a copy of the handbook, but did not use the discrimination complaint procedure while employed with Henry Schein, Inc. (Defs' 56.1 ¶¶ 86-87.) Plaintiff alleges that he did not file a complaint because he feared retaliation. (Pltf's 56.1 ¶ 87.) When plaintiff resigned, he filed a letter with the Equal Employment Opportunity Commission ("EEOC"), in which he alleged he had been discriminated against on the basis of race. (Defs' 56.1 ¶ 89.) Plaintiff's EEOC Charge, dated September 10, 2006, alleges discrimination because of race and color – he did not check gender on the form because he "forgot." (Defs' 56.1 ¶¶ 90-92.) Though plaintiff did not check gender, his letter to the EEOC made numerous references to gender, including allegations that he was discriminated against because he is a black man and that less qualified women were promoted to positions instead of him.

III. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

5

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted); *St. Paul Mercury Ins. Co. v. Pepsi-Cola Bottling Co. of N.Y., Inc.*, 04 civ 360 (DGT), 2007 U.S. Dist. LEXIS 56884, at *18 (E.D.N.Y. Aug. 2, 2007). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

In addition, the Second Circuit has provided specific guidance regarding summary judgment motions in discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g. Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)).

IV. DISCUSSION

A. Failure to Exhaust

As a threshold matter, defendants claim that plaintiff's claims based on gender should be dismissed because plaintiff failed to exhaust his administrative remedies. Specifically, defendants argue that "Mr. Aurelien claimed in his initial ten page letter to the EEOC, and then in his EEOC Charge, that he was discriminated against on the basis of race and color, but not gender or national origin." (Defendants' Memorandum of Law, at 15 n.6.) Plaintiff does not dispute that he neglected to check the box for discrimination on the basis of gender in connection with his

6

EEOC Charge.

Title VII requires that an employment discrimination claimant pursue administrative procedures for each claim before commencing a lawsuit and imposes a deadline for the initiation of such procedures. See generally 42 U.S.C. § 2000e-16; *Briones v. Runyon*, 101 F.3d 287, 289-90 (2d Cir. 1996). According to the Second Circuit, "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 614 (2d Cir. 1999). The Second Circuit has explained that

> [a] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made. In this inquiry, the focus should be on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving. The central question is whether the complaint filed with the EEOC gave that agency adequate notice to investigate discrimination on both bases. The 'reasonably related' exception to the exhaustion requirement is essentially an allowance of loose pleading and is based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [he] is suffering.

*Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (internal quotations and citations omitted). The question is, therefore, "one intimately connected to the facts asserted in the EEOC complaint." *Id.* at 71. As set forth below, after carefully considering the factual allegations presented to the EEOC, this Court determines that the EEOC should have been on notice that, in addition to the claims based on race and color, a claim based on gender was being asserted and would reasonably be expected to be part of the EEOC's investigation given the allegations.

Plaintiff's letter to the EEOC dated July 21, 2006, clearly included factual allegations that put EEOC on notice that a gender claim may exist. For example, plaintiff alleges "I am one of the best in my position and for me to remain in the same role while less qualified white *females* are being promoted over me is a disgrace to both the department and company." (EEOC complaint, at 1 (emphasis added).) In addition, plaintiff repeatedly alleged that he had been discriminated against because he is "a black *man*." (*Id.* (emphasis added).) The letter also lists several positions for which white females were selected over plaintiff, despite having allegedly inferior qualifications. (*Id.* at 7.) Where the factual allegations in the EEOC complaint "can be fairly read to encompass the claims ultimately pleaded in a civil action or to have placed the employer on notice that such claims might be raised," the claim meets the "reasonably related" standard. *Mathirampuzha v. Potter*, 548 F.3d 70, 77 (2d Cir. 2008). In the instant case, considering all the circumstances under this standard, the Court finds that the employer and the administrative agency were on notice, on the basis of the facts alleged, that a claim for discrimination on the basis of gender might exist.

Accordingly, the Court concludes that the

plaintiff's gender claim satisfies the "reasonably related" exception to the exhaustion requirement and defendants' motion for summary judgment on that ground is denied.

B. Failure to Promote

Plaintiff brings claim that defendants discriminated against him in the terms and conditions of his employment based on his race and/or gender in violation of Title VII. Specifically, plaintiff asserts that, on four occasions, defendants failed to promote him because he was a Black male. Defendants argue that this discrimination claim fails as a matter of law because the undisputed facts demonstrate that he was not promoted for legitimate, non-discriminatory reasons. For the reasons set forth below, the Court finds that the plaintiff has established that genuine issues of material fact preclude summary judgment on this claim.

1. Legal Standard

Because plaintiff presents no direct evidence of discriminatory treatment based on his race or gender, the Court reviews his claim under the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). With respect to a discriminatory failure to hire or promote claim, the *McDonnell Douglas* test applies. Thus, plaintiff can establish a *prima facie* case of unlawful discrimination by showing that (1) he is a member of a protected category; (2) he applied for an available position; (3) he was qualified for the position; and (4) he was rejected under circumstances that give rise to an inference of discrimination. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567 (2d Cir. 2000). The Second Circuit has characterized the evidence necessary for the plaintiff to satisfy this initial burden as "minimal" and "de minimis." *See Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001). Moreover, "[a]n inference of discrimination may arise if the position remains open and the employer continues to seek applicants of the plaintiff's qualifications [] or if the position was filled by someone not a member of plaintiff's protected class." *Gomez v. Pellicone*, 986 F. Supp. 220, 228 (S.D.N.Y. 1997) (citing *McDonnell Douglas*, 411 U.S. at 802).

Once plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "'articulate some legitimate, nondiscriminatory reason'" for the adverse employment action. *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996)). If the defendant carries that burden, "the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Patterson*, 375 F.3d at 221 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). "'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Patterson*, 375 F.3d at 221 (quoting *Texas Dep't of Cmty. Affairs*, 450 U.S. at 253).

To meet this burden, the plaintiff may rely on evidence presented to establish his *prima facie* case as well as additional evidence. Such additional evidence may include direct or circumstantial evidence of discrimination. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-101 (2003). It is not sufficient, however, for a plaintiff merely to show that he satisfies "*McDonnell Douglas*'s minimal requirements of a prima facie case" and to put forward "evidence from which a factfinder could find that the employer's

explanation . . . was false." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000). Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination. *See id.*; *Connell v. Consol. Edison Co. of N.Y., Inc.*, 109 F. Supp. 2d 202, 207-08 (S.D.N.Y. 2000).

As the Second Circuit observed in *James*, "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove – particularly discrimination." 233 F.3d at 157; *see also Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998) ("The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases. In these, as in most other cases, the plaintiff has the ultimate burden of persuasion.").

2. Application

a. The Two Senior Buyer Positions Available in September 2005

Plaintiff first alleges that he should have been promoted to one of two Senior Buyer positions that became available in September 2005. He claims that defendants' failure to promote him to these positions was motivated by discrimination based on race and/or gender. The Court finds that plaintiff has clearly made out the *prima facie* case required by *McDonnell Douglas*. He has presented evidence that he is a member of a protected class, that he was qualified for the positions, that he applied for them, and that he was denied the positions in favor of two white women.

In response, defendants have articulated a legitimate, non-discriminatory reasons for not promoting plaintiff. Specifically, defendants argue that the two Senior Buyer positions that became available in September 2005, when plaintiff had been a Buyer for a little over a year, were filled by individuals with greater experience than plaintiff – Kristie Hoffman and Sharon Collyer – who were also the first individuals to apply for the positions. According to defendants, "[t]he job description for Senior Buyer states that '[s]upervisory experience [is] preferred' and that the incumbent 'must demonstrate leadership abilities,' and it requires a '[s]trong understanding of Inventory Management.'" (Defs' 56.1 ¶ 26.) Hence, the Court proceeds directly to the ultimate question of whether plaintiff has presented sufficient evidence from which a reasonable jury could find discrimination on the basis of race and/or gender by examining each party's evidence individually and then proceeding to evaluate the evidence as a whole. *See Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 314 (2d Cir. 1997); *Tomney v. Int'l Ctr. for the Disabled*, 357 F. Supp. 2d 721, 742 (S.D.N.Y. 2005); *see also Siano v. Haber*, 40 F. Supp. 2d 516, 520 (S.D.N.Y. 1999), *aff'd mem.*, 201 F.3d 432 (2d Cir. 1999); *Lapsley v. Columbia Univ. – Coll. of Physicians & Surgeons*, 999 F. Supp. 506, 515 (S.D.N.Y. 1998).

In response to defendants' showing, plaintiff points to several pieces of evidence in support of his argument that a reasonable jury could find that defendants' proffered non-discriminatory reasons for the termination were a pretext for discrimination. First, plaintiff argues that he also had supervisory experience as he "did the work of Senior Buyer when [his supervisor] was not around which was a lot of the time and supervised everybody underneath him."

(Aurelien Aff. ¶ 31.) He further claims that he "was also exceptionally knowledgeable [and] was asked to write the training manual for employees including management on buying and making profit for Henry Schein." (Aurelien Aff. ¶ 31.) Plaintiff also argues that he was more qualified for the position than Ms. Hoffman because she was coming from the medical division and, therefore, did not have experience with the dental division. Plaintiff contends that he was similarly situated to Ms. Collyer. (Plaintiff's Memorandum of Law, at 13.) Plaintiff further contends that Ms. Hoffman's year-end evaluation indicates that she "barely knew how to use defendant's systems, which means that Kristie did not possess a strong understanding of Inventory Management. In addition, Kristie's end of year evaluation stated that Kristie needed much additional training." (Plaintiff's Memorandum of Law, at 13.) Plaintiff further challenges Ms. Hoffman's supervisory experience and argues that her year of experience prior to joining Henry Schein, Inc. was gained as a floor supervisor at a drug store, which would not be relevant to the position at issue. (Plaintiff's Memorandum of Law, at 14.) Plaintiff also contends that he and Ms. Collyer were similarly situated as they had equal qualifications and both "applied to replace their respective Senior Buyers in their dental division who vacated that position." (Plaintiff's Memorandum of Law, at 14.) Plaintiff argues that "by showing the fact that Defendant's [sic] promoted Sharon Collyer (White and female) who was similarly situated to and equally as qualified as Plaintiff Coster Aurelien, (Black and male), and the fact that Defendant's [sic] promoted Kristie Hoffman over Plaintiff who was more qualified, Plaintiff has demonstrated that Defendants' promotion of the less qualified Kristie Hoffman who was White and female was done under circumstances supporting an inference of racial and gender discrimination." (Plaintiff's Memorandum of Law, at 15.)

The Second Circuit has examined cases similar to the one before this Court and has held that "[t]he employer need not prove that the person promoted had superior objective qualifications, or that it made the wisest choice, but only that the reasons for the decision were nondiscriminatory." *Davis v. State Univ. of N.Y.*, 802 F.2d 638, 641 (2d Cir. 1986). "Courts have recognized that an employer's disregard or misjudgment of a plaintiff's job qualifications may undermine the credibility of an employer's stated justification for an employment decision. . . . At the same time, the court must respect the employer's unfettered discretion to choose among qualified candidates." *Byrne v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) (internal quotations and citations omitted). The Second Circuit in *Byrne* went on to articulate the following standard:

> When a plaintiff seeks to prevent summary judgment on the strength of a discrepancy in qualifications ignored by an employer, that discrepancy must bear the entire burden of allowing a reasonable trier of fact to not only conclude the employer's explanation was pretextual, but that the pretext served to mask unlawful discrimination. In effect the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.

*Id.* at 103; *see also Chambers-English v.*

*Unisys Corp.*, No. 07-1068-cv, 2008 U.S. App. LEXIS 23421, at *2 (2d Cir. Nov. 12, 2008) (affirming the lower's court entry of judgment in defendant's favor where the record "falls far short of demonstrating that [plaintiff's] qualifications were so superior to [the selected candidate's] that no reasonable person, in the exercise of impartial judgment, could have chosen [the selected candidate] over [plaintiff] for the job in question.") (internal quotation marks omitted); *Timothy v. Our Lady of Mercy Med. Ctr.*, No. 06-0081-cv, 2007 U.S. App. LEXIS 3980, at *8-*9 (2d Cir. Feb. 21, 2007) ("absent a striking disparity in . . . credentials, one should be very hesitant to draw any inference from a battle of credentials").

Plaintiff argues that the standard laid out in *Byrne* only applies where a differential in credentials is the only evidence offered by plaintiff and here plaintiff also points to, among other things, the statement by Ms. Green and the circumstances surrounding the subsequent failures to promote as additional evidence to support an inference of discriminatory action. (*See* Plaintiff's Memorandum of Law, at 12 (citing *Collins v. Cohen Pontani Lieberman & Pavane*, 04 CV 8983 (KMW)(MHD), 2008 U.S. Dist. LEXIS 58047, at *49-50 (S.D.N.Y. July 31, 2008).) This Court agrees with plaintiff's position that the relative qualifications must be considered in light of the entire record. Specifically, the Second Circuit has made clear, in reversing a district court's grant of summary judgment to employer on a failure to promote claim, that "[i]n determining the appropriateness of summary judgment, the court should not consider the record solely in piecemeal fashion, giving credence to innocent explanations for individual strands of evidence, for a jury, in assessing whether there was impermissible discrimination and whether the defendant's proffered explanation is a pretext for such discrimination, would be entitled to view the evidence as a whole." *Howley v. Town of Stratford*, 217 F.3d 141, 151 (2d Cir. 2000); *see also Gregory v. Daly*, 243 F.3d 687, 700 (2d Cir. 2001) ("We do not disaggregate mutually supportive assertions that plaintiff's sex played a significant causal role in the decision at issue; nor do we treat each as a distinct claim that must separately possess a firm enough basis to survive a challenge at pleading or summary judgment.").

This Court's conclusion on this issue, which is dictated by the Second Circuit's guidance in the above-referenced cases, is consistent with the analysis by other district courts under similar circumstances. For example, in *Henry v. Wyeth Pharms, Inc.*, No. 05 Civ. 8106 (WCC), 2007 U.S. Dist. LEXIS 93694 (S.D.N.Y. Dec. 19, 2007), the particular argument advanced by defendants in the instant case (both in their papers and at oral argument) – namely, that each failure to promote should be considered separately in isolation to one another – was rejected. Specifically, in *Henry*, plaintiff had claims of discrimination and retaliation based upon series of events that took place over approximately four years, including multiple claims of failure to promote. *Id*. at *2-*3. The court rejected the argument that "multiple failure to promote claims are separate and discrete employment decisions that must be analyzed on their own facts" and, instead, concluded that "it was perfectly appropriate for [the court] to consider all of plaintiff's evidence in context and as a whole, and not, as defendants would have it, as a series of isolated and completely unrelated events." *Id*. at *6-*7. In reaching this decision, the court noted that neither the Supreme Court's decision in *Nat'l R.R. Passengers Corp. v. Morgan*, 536 U.S. 101 (2002), nor its decision in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007), suggest to the contrary. *See Henry*,

2007 U.S. Dist. LEXIS 93694, at *11 & n.4 ("Neither case [*i.e., Morgan* nor *Ledbetter*] held, as defendants assert, that all of a plaintiff's discrimination claims – and the facts relevant to each – must be analyzed in isolation from each other on a motion for summary judgment. . . . If anything, *Morgan* supports the opposite view: the Court made clear that a plaintiff can rely on events that occurred outside the statutory period as 'background evidence in support of a timely claim.' *Morgan*, 536 U.S. at 113. In other words, events that are themselves incapable of sustaining a discrimination claim can serve as evidence in support of another, valid claim.") Although each failure to promote is a discrete act in connection with the various statutory time periods, this Court is aware of no case in the jurisprudence of the Supreme Court or Second Circuit that precludes a jury from looking at the entire record, including the combined circumstances regarding multiple failures to promote, to determine whether any of the individual, alleged failures to promote was a pretext for discrimination. To the contrary, as the above-referenced Second Circuit cases have repeatedly explained, the court in reviewing the appropriateness of summary judgment should (as the jury is permitted to do in a trial) view the evidence as a whole, rather than in piecemeal fashion. *See, e.g., Ellenbogen v. Projection Video Servs., Inc.*, 99 Civ. 11046 (NRB), 2001 WL 736774, at *26 (S.D.N.Y. June 29, 2001) ("[I]n the failure to promote context the Second Circuit has quite clearly instructed that a District Court is to consider the sum of the evidence in its totality, rather than examining specific aspects of evidence in isolation.").

In fact, the Supreme Court recently reiterated the importance of looking at relative qualifications in light of the entire record when it rejected the Eleventh Circuit's test that pretext can only be established through comparative qualifications where "'the disparity in qualifications is so apparent as virtually to jump off the page and slap you in the face.'" *Ash v. Tyson Foods, Inc.,* 546 U.S. 454, 456-57 (2006) (quoting lower court opinion) (internal quotation and citation omitted). In rejecting this formulation, Supreme Court noted that "[t]he visual image of words jumping off the page to slap you (presumably a court) in the face is unhelpful and imprecise as an elaboration of the standard for inferring pretext from superior qualifications." *Id.* Thus, although the *Ash* Court did not lower the above-referenced burden established by the Second Circuit in *Byrne* and other cases that a plaintiff must meet, it reinforced the importance of not just looking at relative qualifications, but rather considering relative qualifications in light of the entire record. *See, e.g., Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 626-27 (6th Cir. 2006) (discussing *Ash* and noting the following: "Whether qualifications evidence will be sufficient to raise a question of fact as to pretext will depend on whether a plaintiff presents other evidence of discrimination. In the case in which a plaintiff does provide other probative evidence of discrimination, that evidence, taken together with evidence that the plaintiff was as qualified as or better qualified than the successful applicant, might well result in the plaintiff's claim surviving summary judgment."); *see also Montalvo v. United States Dep't of Agric.*, Civil Action No. 05-1377, 2006 WL 342251, at *3 (E.D. La. Nov. 27, 2006) ("The *Ash* decision was not meant to lower the burden; however, it did seek to refocus the a [sic] court's inquiry on the question of pretext as opposed to a relative level of the plaintiff's qualifications.").

In the instant case, when plaintiff's claim for failure to promote to either of these two Senior Buyer positions is considered in the context of the entire record – including, among other things, (a) plaintiff's evidence

regarding his qualifications as compared to other individuals who received the promotions; (b) that plaintiff was denied other promotions to positions for which he has offered evidence that he was qualified; (c) that the Company later eliminated two senior buyer positions that became available for which plaintiff has provided evidence that he would have been the most qualified candidate; (d) that the Company filled a senior buyer position that became available shortly after plaintiff left the Company; and (e) the alleged statement by Supervisor Green that she did not disagree with plaintiff's contention that he was not promoted because of his race – a reasonable trier of fact could find that the reasons offered by defendants are pretextual. *See Terry v. Ashcroft*, 336 F.3d 128, 140 (2d Cir. 2003) (finding summary judgment inappropriate where it was disputed whether plaintiff was the most qualified applicant for two positions he was denied); *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 311-14 (2d Cir. 1997) (reversing a district court's granting of summary judgment in favor of the defendant, where plaintiff offered evidence that he was more qualified for a position and provided circumstantial evidence, such as deviation from its typical hiring procedures, supporting a finding of discrimination). Viewing the evidence in the light most favorable to the plaintiff, this Court finds that plaintiff does point to sufficient evidence to create a genuine factual question as to whether defendants' stated business reason for its hiring decision was a pretext for discrimination. *Id*. ("Where the plaintiff has presented evidence sufficient to support an inference of impermissible discrimination and an inference that the reasons given by the defendant for its employment decision were not its real reasons, triable issues of fact are presented.") For that reason, summary judgment is denied on the first alleged failure to promote claim.

b. The Senior Buyer Position in January 2006

The next position plaintiff alleges he was not promoted to for discriminatory reasons was a Senior Buyer position that was vacated in January 2006. The Court finds that plaintiff has made out the *prima facie* case required by *McDonnell Douglas* for this claim. The standard here is somewhat different because this is not a situation in which plaintiff applied for a position that was either left unfilled despite plaintiff's qualification for the position, or was filled by someone not in plaintiff's protected class. Instead, the position was allegedly eliminated in order to avoid having to promote plaintiff due to plaintiff's race and/or gender. Here, plaintiff alleges that he was the obvious successor for the position; that the Company also eliminated the next senior buyer position that became available, for which plaintiff allegedly would have been the natural choice; that the Company did not eliminate the first senior buyer position to become available after plaintiff left the Company; and that defendants' failure to promote plaintiff to the three other positions to which plaintiff applied substantiates plaintiff's claim that defendants were operating out of discriminatory animus. This is sufficient to satisfy plaintiff's *prima facie* showing. *See, e.g., Bazile v. N.Y. City Hous. Auth.*, 00 Civ. 7215 (SAS), 2002 U.S. Dist. LEXIS 1639, at *36 (S.D.N.Y. Feb. 1, 2002). The second element – namely, that plaintiff applied for an available position – can be established under these circumstances by demonstrating that defendants reasonably should have known that plaintiff would be interested in the position and, given the entire record, summary judgment on this element is unwarranted. *Fischer v. Avanade, Inc.*, 519 F.3d 393, 402 (7th Cir. 2008) ("At first blush, Fischer apparently fails to meet the second element of the prima facie case,

since she did not apply for the Central Region Director position. In cases such as this, however, where the plaintiff alleges that there were discriminatory motives behind not announcing the position to her, Fischer only needs to show that, had [Avanade] approached her, she would have accepted the offered position, which Defendant does not contest."); *Brennan v. Tractor Supply Co.*, 237 Fed. Appx. 9, 17 (6th Cir. 2007) ("In failure to promote cases where the employer does not notify its employees of the available promotion or does not provide a formal process for application, a plaintiff does not have to establish that he applied, and was considered for, the promotion. Rather, the Company has a duty to consider all who might reasonably be interested in a promotion were its availability made generally known.") (internal citation omitted); *Kolpakchi v. Principi*, 113 Fed. Appx. 633, 636 (5th Cir. 2004) (actually applying for a position is not necessary where plaintiff has done everything possible to convey his interest in the position to the employer); *Kehoe v. Anheuser-Busch, Inc.*, 96 F.3d 1095, 1105 n.13 (8th Cir. 1996) ("[A]lthough it is usually necessary for a plaintiff to show that he applied for an available position, that element of the prima facie case will be excused where he demonstrates that the employer 'had some reason or duty to consider him for the post.'") (citation omitted). Here, plaintiff contends that defendants knew that plaintiff was interested in a senior buyer position, that plaintiff was the obvious choice for the next available senior buyer position, and that, as a result, defendants eliminated the position. As for the fourth element, in the case of a restructuring, it is sufficient for plaintiff to put forth evidence that the "restructuring plan . . . was in fact a discriminatory policy or was being implemented in a discriminatory fashion." *Bazile*, 2002 U.S. Dist. LEXIS 1639, at *34. In light of the other alleged failures to promote, the subsequent elimination of another Senior Buyer position for which plaintiff allegedly would have been the best candidate, and the fact that the first Senior Buyer position to become available once plaintiff left the Company was not eliminated, plaintiff has met the minimal requirements of establishing a *prima facie* case.

Defendants responded by putting forth evidence that the position was eliminated due to a restructuring of the buying teams that took place at that time and, therefore, there was no failure to promote. (Defs' 56.1 ¶ 49; Aurelien Dep., at 137-38.) Therefore, defendants have articulated a legitimate non-discriminatory reason for defendants' failure to promote plaintiff to the position at issue. Hence, the Court proceeds directly to the ultimate question of whether plaintiff has presented sufficient evidence from which a reasonable jury could find race and/or gender discrimination by examining each party's evidence individually and then proceeding to evaluate the evidence as a whole.

To survive summary judgment on this claim, plaintiff must point to evidence that the Company restructured in order to avoid promoting him. *See, e.g., Bazile*, 2002 U.S. Dist. LEXIS 1639, at *36 (plaintiff must "present evidence from which a jury could find that his race was a motivating factor in [defendants'] decisions to eliminate the . . . position he applied for"). Plaintiff argues that "restructuring the buying team is pretext for discrimination." (Pltf's 56.1 ¶ 49) ("Since Plaintiff was the best qualified to take a future Senior Buyer position that became open as a result of a Senior Buyer leaving his or her position, rather than open the position and promote Plaintiff to Senior Buyer, Defendant's [sic] instead told Plaintiff that the Senior Buyer position was eliminated.") Plaintiff points to the fact that the Company subsequently restructured to eliminate the next senior buyer position that

became available, for which plaintiff alleges he would have been the best candidate, and the email at Exhibit 19, which indicates that, on or about the time the second position would have become available, the Company may have been considering candidates to fill it. Plaintiff further provides evidence that the first senior buyer position that became available after plaintiff left the Company was not eliminated. This evidence, in conjunction with defendants' alleged failure to promote plaintiff to three other positions, is sufficient evidence upon which a reasonably jury could basis a finding of discrimination. Therefore, defendants' motion for summary judgment is denied on the second failure to promote claim.

### c. Product Manager Position

Plaintiff next alleges that he should have been promoted to a Product Manager position that became available in May 2006 in the Company's Corporate Brand Development Department. (Defs' 56.1 ¶ 60.) At the outset, the Court finds that plaintiff has made out the *prima facie* case required by *McDonnell Douglas*. Plaintiff has provided evidence that, among other things, he was qualified for the position, but that it was given to a white woman instead.

In response, defendants have established a legitimate, non-discriminatory reason for not promoting plaintiff. Specifically, defendants argue that they selected a candidate that they determined was better suited for the position. Defendants put forth evidence that "two people applied for the Product Manager position – Mr. Aurelien and his supervisor, Kim O'Connell." (Defs' 56.1 ¶ 63.) At the time, Ms. O'Connell had worked for Henry Schein, Inc. for fourteen years and "had developed the kinds of working relationships with the other Company divisions that were important to the Product Manager position." (Defs' 56.1 ¶ 65; Aurelien Dep., at 244-45.) "Ms. O'Connell had worked for Henry Schein as a Buyer for four years and as a Senior Buyer for three years at the time of the promotion decision." (Defs' 56.1 ¶ 66.) The Company's Vice President of Global Corporate Brand Development, Rick Glass, and Director of Corporate Brand Development, Jeffrey Sherman, interviewed both candidates and determined unanimously "that Ms. O'Connell's analytical skills, and her many years with the Company, which had given her the time to develop strong relationships with the different divisions in the Company, and during which she had served in a supervisory position, made her the better candidate." (Defs' 56.1 ¶¶ 69-70; Aurelien Dep., at 218-19.) Thus, defendants have articulated a legitimate non-discriminatory reason for their failure to promote plaintiff to this position and the Court proceeds directly to the ultimate question of whether plaintiff has presented sufficient evidence from which a reasonable jury could find discrimination by examining each party's evidence individually and then proceeding to evaluate the evidence as a whole.

Plaintiff points to several pieces of evidence to support his argument that he was not promoted to this position as a result of discrimination based on race and/or gender. First, plaintiff points to an email sent to him by Jeffrey Sherman, dated June 2, 2006, which states "I totally agree your ability to bring what we needed was crystal clear I believe, who knows what else may come down the pipe. You also really impressed Rick." (Plaintiff's Opposition to Summary Judgment, Ex. 17.) Plaintiff argues that this indicates that two of the decision-makers believed that plaintiff was qualified for the position, and the best choice for the position. Next, plaintiff argues that he was more qualified that Ms. O'Connell despite the fact

15

that she was at Henry Schein, Inc. longer. Specifically, plaintiff points to Ms. O'Connell's performance reviews which indicate "her poor performance in the Senior Buyer position, let alone her lack of readiness for management." (Plaintiff's Memorandum of Law, at 19.) Finally, this failure to promote must be considered in the context of the evidence of other failures to promote, which further supports plaintiff's claims. Although defendants have put forth evidence challenging these claims, a jury could reasonably find, based upon the evidence put forth by plaintiff, that defendants unlawfully discriminated against plaintiff in failing to promote him to this position. *See Curry v. City of Syracuse*, 316 F.3d 324, 333 (2d Cir. 2003) ("[i]t is well established that 'credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'") (quoting *Fischl v. Armitage*, 128 F.3d 50, 55-56 (2d Cir. 1997)). Based upon the evidence set forth by plaintiff, viewing it in the light most favorable to plaintiff and drawing all reasonable inferences in plaintiff's favor, a reasonable jury could find that defendants' proffered reason for failing to promote plaintiff to this position was pretext for discrimination. Therefore, defendants' motion for summary judgment is denied as to this claim of discriminatory failure to promote.

d. Ms. O'Connell's Senior Buyer Position

Finally, plaintiff claims that he should have been promoted to the Senior Buyer position left by Ms. O'Connell when she became Product Manager. For the reasons set forth *supra* in analyzing the first restructuring to eliminate a Senior Buyer position, the Court finds that plaintiff has made out the *prima facie* case required by *McDonnell Douglas*.

Defendants have articulated a legitimate non-discriminatory reason for their failure to promote plaintiff to this position. Specifically, defendants argue that there was no failure to promote because "the Business Management Team continued implementing its plan to have the Senior Buyers manage, not buy, and it once again reduced the number of Buying Teams, this time from five to four." (Defs' 56.1 ¶ 75; Aurelien Dep., at 137-38.) Hence, the Court proceeds directly to the ultimate question of whether plaintiff has presented sufficient evidence from which a reasonable jury could find race and/or gender discrimination by examining each party's evidence individually and then proceeding to evaluate the evidence as a whole.

Plaintiff responds by pointing to an email sent by Michelle Green to a recruiter on June 9, 2006, which states "[w]e are open to meeting with [an applicant]. One of our Senior Buyers is transferring to Corporate Brand. Please have [the applicant] come in." (Plaintiff's Opposition to Summary Judgment, Ex. 19.) Plaintiff argues that this email "expressly states that Defendant's [sic] were interested in hiring a Senior Buyer for the Senior Buyer position that Kim O'Connell would vacate as a result of her promotion to Product Manager." (Pltf's 56.1 ¶ 74.) Yet, when plaintiff inquired about the promotion in July of 2006 "Defendant's [sic] for the second time told Plaintiff that they were not going to fill that Senior Buyer position." (Pltf's 56.1 ¶ 74.) Defendants provide counter-arguments, but it is clear that there is a genuine issue of material fact as to whether defendants were considering applications for the position. *See Curry v. City of Syracuse*, 316 F.3d 324, 333 (2d Cir. 2003). In short, after reviewing plaintiff's evidence in light of the entire record, summary judgment on this claim is also not warranted.

In sum, with respect to the failure to promote claims, plaintiff's evidence –

including, among other things, his relative qualifications compared to the individuals promoted, the circumstances surrounding the interview and decision-making process, the timing of decisions related to the elimination of positions and filling of positions, an alleged statement by Supervisor Green that she did not disagree with plaintiff's assessment that he was denied the promotion because of his race, as well as documentation, such as the June 2006 emails from Supervisors Green and Sherman – is sufficient to create genuine disputes of material fact on the issue of pretext as to each of the failures to promote. Although defendants have pointed to certain evidence undermining those claims, there is sufficient evidence, when viewed in the light most favorable to plaintiff, drawing all reasonable inferences in his favor, for the claims to defeat defendants' summary judgment motion.

### B. Constructive Termination

#### 1. Legal Standard

With respect to the constructive termination claim, the *McDonnell Douglas* test again applies. Thus, plaintiff must first establish a *prima facie* case of unlawful discrimination by showing (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 (2d Cir. 2000). To satisfy the *prima facie* case plaintiff must show that there was an adverse employment action. Plaintiff alleges that he was constructively terminated. "An employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily . . . working conditions are intolerable when, viewed as a whole, they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Terry v. Ashcroft*, 336 F.3d 128, 151-52 (2d Cir. 2003). "A plaintiff must show more than that she was dissatisfied with her assignments, that she felt that the quality of her work had been unfairly criticized or that working conditions were difficult or unpleasant." *Alleyne v. Four Seasons Hotel - New York*, 99 civ. 3432 (JGK), 2001 U.S. Dist. LEXIS 1503, at *42 (S.D.N.Y. Feb. 15, 2001).

#### 2. Application

Plaintiff has stated that he quit solely based on defendants' failure to promote him. (Aurelien Dep. at 15.) While "a denial of a promotion, without more, does not amount to a constructive discharge," *Alleyne*, 2001 U.S. Dist. LEXIS 1502, at *43, an employer's "dashing reasonable expectations of career advancement may create intolerable working conditions that rise to the level of constructive discharge." *Halbrook v. Reichhold Chems., Inc.*, 735 F. Supp. 121, 127 (S.D.N.Y. 1990). Plaintiff has presented evidence that, based on the four above-described failures to promote, he believed that defendants were determined to prevent him from advancing in his career. Defendants claim that they did not intend to force plaintiff to leave and, in fact, took actions to encourage plaintiff to stay with Henry Schein, Inc. on several occasions. (Defs' 56.1 ¶¶ 16, 81.; Goldberg Dep., at 93-95; Aurelien Dep., at 262-63.) Nonetheless, the disputed issues of fact regarding the constructive termination claim are appropriately resolved by a jury under the factual circumstances of this case. Therefore, defendants' motion for summary judgment is denied as to plaintiff's claim of constructive termination as well.

17

## V. Conclusion

For the foregoing reasons, defendants' motion for summary judgment is denied in its entirety pursuant to Rule 56 of the Federal Rules of Civil Procedure.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: February 12, 2009
Central Islip, NY

\* \* \*

Plaintiff is represented by Anthony C. Ofodile, Esq. of Ofodile & Associates P.C., 498 Atlantic Avenue, Brooklyn, New York 11217. Defendant is represented David M. Wirtz, Esq. and Orit Goldring, Esq. of Littler Mendelson, P.C., 900 Third Avenue, New York, New York 10022.